IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| AMANDA KONDRAT'YEV, ANDREIY KONDRAT'YEV, ANDRE RYLAND, and DAVID SUHOR, <br><br>*Plaintiffs*, <br><br>v. <br><br>CITY OF PENSACOLA, FLORIDA, ASHTON HAYWARD, in his official capacity as Mayor of the City of Pensacola, and BRIAN COOPER, in his official capacity as Director of the City of Pensacola Parks & Recreation Department, <br><br>*Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br>CASE NO. |

## COMPLAINT

### INTRODUCTION

The City of Pensacola has erected, maintains, and displays an enormous twenty-five-foot-tall cement Latin cross—the universally recognized symbol of Christianity—on city property at city expense. The cross is solely used for Christian worship services every Easter morning. Four Pensacola residents challenge the cross because Christian crosses on government property violate their First Amendment rights, as federal courts have held in more than twenty cases.

1

Seeking to protect and vindicate their civil liberties and constitutional rights, including their right to frequent a public park free from state-sanctioned religious symbols, the above-captioned Plaintiffs state as their complaint against the above-captioned Defendants the following:

## NATURE OF THE CLAIMS

1. This action challenges the constitutionality of Defendants' ownership, maintenance and prominent display on government property of a massive Christian cross (the "Bayview Cross"). The Bayview Cross violates the Establishment Clause of the First Amendment of the United States Constitution, as applied to Florida by the Fourteenth Amendment.

2. The large government-owned, government-funded, and government-maintained Christian cross, prominently situated within a popular public park, dominates the visual space. The Bayview Cross has the purpose and effect of endorsing Christianity over other religions and religion over non-religion.

3. Plaintiffs seek injunctive and declaratory relief and damages under 42 U.S.C. § 1983 against the Defendants to redress these constitutional violations, together with recovery of attorneys' fees and costs under 42 U.S.C. § 1988 (b).

## JURISDICTION AND VENUE

4. This case arises under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983 and presents a federal

question within this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The Court has jurisdiction to issue a declaratory judgment under 28 U.S.C. § 2201 and to provide injunctive relief and damages under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

5. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred herein, and because the majority of defendants reside herein.

**PARTIES**

6. Plaintiff Amanda Kondrat'yev is a citizen and resident of Pensacola, Florida, and has lived in Pensacola for approximately ten years. She currently lives about six and a half miles from the Bayview Cross, along with her husband, Plaintiff Andreiy Kondrat'yev. Ms. Kondrat'yev is a Humanist and an Atheist. She is a member of the American Humanist Association ("AHA"), the Secular Student Alliance, and Humanists of West Florida, an AHA chapter.

7. Ms. Kondrat'yev first encountered the Bayview Cross while walking through Bayview Park with a friend in or about 2008 or 2009. She was immediately affronted by the government's enormous Christian cross display and expressed her feelings of shock to her friend as soon as they saw the imposing Christian symbol. She has had unwelcome contact with the Bayview Cross approximately thirty times since.

8. Ms. Kondrat'yev has two young children, ages three and twelve. She and her husband, Plaintiff Andreiy Kondrat'yev, have raised their children as non-theists and do not want their children to have unwelcome contact with the government's Christian cross display in Bayview Park.

9. Bayview Park is near the Kondrat'yevs' home. The Kondrat'yev family likes to spend time at the beach, and Bayview Park is the closest park to their home with a waterfront. The giant cross in Bayview Park significantly impedes Ms. Kondrat'yev's use and enjoyment of the local park. Due to the presence of the Bayview Cross, and its enormous size, Ms. Kondrat'yev finds it difficult, if not impossible, to fully enjoy the park. She feels the cross cannot be ignored or overlooked. Ms. Kondrat'yev perceives the Bayview Cross to be a clear indication that the government is supporting religion. As a non-Christian, Ms. Kondrat'yev is personally offended and feels excluded by this governmental message.

10. Plaintiff Andreiy Kondrat'yev is Ms. Kondrat'yev's husband and resides with her in Pensacola, Florida. Mr. Kondrat'yev is a physicist and a Humanist. He is a member of AHA and has been a member of the Humanists of West Florida, an AHA chapter, since 2012. Mr. Kondrat'yev first encountered the Bayview Cross in 2010 and has seen it, and has had unwelcome contact with it, approximately thirty times since. He frequently attends meetings and gatherings at

Bayview Park and has had no choice but to pass the Bayview Cross en route to these events.

11.     Mr. Kondrat'yev feels that the government-sponsored cross imposes a religious presence on the park and makes non-Christians feel excluded from the community. Mr. Kondrat'yev does not like feeling excluded from a place that he frequents simply because he does not subscribe to the religion that uses the symbol to impose their authority over others.

12.      Mr. Kondrat'yev's use and enjoyment of the local park is impeded by the Bayview Cross. He feels a sense of peace and tranquility at the Bayview Park, but feels that is overshadowed by a religious symbol that signifies torture and violence to him.

13.     Plaintiff Andre Ryland is a citizen and resident of Pensacola, Florida. He lives approximately five miles from the Bayview Cross. Mr. Ryland is an Atheist and Humanist and does not believe in any god or gods. He has been a member of AHA for about fifteen years and has been a member of Freedom From Religion Foundation (FFRF) for about ten years. He first encountered the Bayview Cross in 2013 and was immediately affronted by the message it sent – that the government was endorsing and promoting Christianity. Mr. Ryland sees the Bayview Cross as a religious symbol and objects to the governmental promotion of and affiliation with religion it embodies.

14. Since first encountering the Bayview Cross in 2013, Mr. Ryland has had unwelcome contact with the cross numerous times. He visits the Bayview Park many times throughout the year. Mr. Ryland does not wish to encounter the Bayview Cross in the future.

15. Plaintiff David Suhor is a citizen and resident of Pensacola, Florida. He has lived in Pensacola for twenty-three years. Mr. Suhor is not a Christian and does not believe in any god or gods. He is a member of AHA, FFRF, and the Humanists of West Florida, an AHA chapter. Mr. Suhor lives about a mile and a half from the Bayview Cross and encounters it on his regular bike rides, as often as twice a week. He also visits Bayview Park regularly.

16. Due to the size and prominence of the Bayview Cross, Mr. Suhor believes it cannot be ignored or overlooked. Mr. Suhor objects to the government's display of the Christian cross because he believes it is an endorsement of Christianity, placed primarily for religious purposes, including aggrandizing Easter Sunday services. He believes that the Bayview Cross associates a Christian religious symbol with the government and gives the impression that the government supports and approves of Christianity, as opposed to other religions, and that the government prefers Christians and Christianity to other religions. As a non-Christian, Mr. Suhor is personally offended and feels excluded by this

governmental message. He opposes this appearance of governmental favoritism for religion and for a particular religion, Christianity.

17. Defendant City of Pensacola (the "City") is a municipality in the State of Florida, within the county of Escambia, and exists pursuant to the laws of the State of Florida.

18. Defendant Ashton Hayward, sued in his official capacity as mayor of the City of Pensacola, is an individual who has served, and continues to serve, as the mayor of the city, responsible for overseeing day-to-day governmental operations, including but not limited to setting city policy, carrying out city policy, managing and supervising staff, and ensuring that city activities comply with applicable law.

19. Defendant Brian Cooper is an individual who has served, and continues to serve as Director of the City of Pensacola Parks & Recreation Department. He is sued in his official capacity. The Parks & Recreation Board ("the Board") advises and makes recommendations to the City Council and advises the Mayor's office via the Director of Parks & Recreation on matters concerning the establishment, maintenance and operation of parks within the City.

20. The Board provides input on master plan updates and improvements, and policy development for the use of recreational facilities. The Board is comprised of nine members appointed by the City Council.

## FACTS

### Physical Attributes, Location, and Ownership of Bayview Cross

21. The Bayview Cross is a towering Christian symbol prominently displayed on government property.

22. The Bayview Cross is situated in a public park known as Bayview Park, within the City of Pensacola, Florida.

23. The Bayview Cross is in the shape of a Latin cross.

24. The Latin cross, a cross whose base stem is longer than the other three arms, is the symbol of Christianity, representing the instrument of the crucifixion of Jesus, according to Christian dogma.

25. The Bayview Cross is white. It stands approximately twenty-five feet tall with a crossbar approximately ten feet wide. The shaft is approximately one foot thick at the base, tapering upwards. The crossbar and the remainder of the shaft are several inches thick, and square in perimeter.

26. True and accurate photographs of the Bayview Cross, taken in or about May 2015, are attached herein as Exhibit 1.

27. The Bayview Cross is a freestanding unadorned cross.

28. The Bayview Cross stands alone as the only permanent religious display in Bayview Park.

29. The Bayview Cross is located in the northeast section of Bayview

Park, between the tennis courts and the Bayou Texar shore, just west of the parking lot and the boat ramp. A true and accurate depiction of the aerial view of the Bayview Cross location on a Google map is attached herein as Exhibit 2. Bayou Texar is a bayou in East Pensacola separating the East Hill and East Pensacola Heights neighborhoods.

30. The Bayview Cross is not part of a larger multi-faith complex, such as one might see in a cemetery.

31. The Bayview Cross is not a part of a unified exhibit in a typical museum setting.

32. The Bayview Cross is not surrounded by secular symbols of commemoration.

33. The Bayview Cross is taller than any buildings and similar structures that are visible in that area.

34. There is a light at the base of the cross, on the ground directly in front of the cross, facing up. A true and accurate photograph of the light fixture in front of the Bayview Cross, taken on or about April 25, 2016, is attached herein as Exhibit 3.

35. Upon information and belief, the City installed a new light fixture at the base of the cross in or about November 2015.

36. Upon information and belief, the City installed yet another new light

fixture at the base of the cross in or about January or February 2016. See Exhibit 3.

37. The City of Pensacola ("City") owns Bayview Park.

38. The City owns the Bayview Cross.

39. The City is responsible for the maintenance and upkeep of the Bayview Cross.

40. The City has the legal authority to remove the Bayview Cross from its property.

### Platform and Plaque for Easter Sunrise by the Bayview Cross

41. The Bayview Cross stands adjacent to a large elevated platform (also known as a stage or amphitheater). See Exhibit 1.

42. The platform and a dedication plaque attached to the front of the platform were installed in 1951, pre-dating the Bayview Cross, and are owned by the City. A photograph of the plaque, taken in or about November or December 2015, is attached hereto as Exhibit 4.

### Religious History and Religious Purpose of Bayview Cross

43. The Christian cross was placed in Bayview Park sometime after 1951 but before 1965.

44. According to emails sent by City employees, the City has no information about the history of the cross.

45. Upon information and belief, the Junior Chamber of Commerce, also

known as the Jaycees, were involved in erecting the Bayview Cross, with the approval and authorization of the City.

46. The Jaycees have a religious agenda. Their "Creed" begins "We believe that faith in God gives meaning and purpose to human life . . ."

47. The Jaycees' Florida website states, in part, that the reference to "Faith in God" was added to the Creed in 1951, "affirming the importance of the Jaycees' belief in God."

48. The Jaycees have regularly held religious Easter Sunday Services at the Bayview Cross.

49. The Bayview Park was a site for Easter Sunday Services even before the Bayview Cross was erected. Once the Bayview Cross was erected, it became the primary if not exclusive site for Easter Services within the park.

## Religious Services

50. The predominant and nearly exclusive use of the Bayview Cross has been for religious activity.

51. Religious services held at Bayview Cross have been exclusively Christian in nature.

52. There is no record of any religious non-Christian events being held at the Bayview Cross.

53. Christians are the primary, if not exclusive, users of the Bayview

11

Cross.

54. The Bayview Cross has been the site of religious services, and specifically Christian Easter Sunrise services, since its inception.

55. Apart from the Easter Sunrise Services, there are no other regularly scheduled annual events that take place at the Bayview Cross.

56. The City refers to this area of the park as the "Sunrise Service" area. True and accurate copies of Pensacola Parks & Recreation Department Board Meeting Minutes referencing the "Sunrise Service" area at Bayview Park are attached hereto as Exhibit 5.

57. Easter Sunrise service is a distinctly Christian worship service that takes place on Easter.

58. Congregants gather on the lawn in front of the Bayview Cross before dawn on Easter morning to watch the sunrise.

59. Though the exact date of the first Bayview Park Easter Sunrise Service is unclear, Easter Sunrise Services have been held at the site where the cross currently stands in Bayview Park for more than seventy years.

60. Upon information and belief, the first Easter Sunrise Service at Bayview Park was held in or around 1940 or 1941.

61. The 1951 Bayview Park Easter Sunrise Service is referenced in the January 9, 1951 Pensacola City Council meeting minutes and a March 1951

Pensacola News Journal article.

62. On January 9, 1951, the Pensacola City Council unanimously accepted a resolution of the Pensacola Junior Chamber of Commerce, and held "that a plaque be furnished by the City, with dedication services to be held on next Easter at sunrise."

63. An excerpt from a 1951 Pensacola News Journal article states in part: "The new permanent platform at Bayview park will be completed for the services, Joe Emmanuel, chairman of the Jaycee Easter Sunrise service committee, said Thursday."

64. Though the Jaycees are the original sponsors of the annual Bayview Park Easter Sunrise Services, local Christian churches have hosted the event in recent years.

65. The First Baptist Church of Pensacola hosted, or co-hosted, the services in the mid-late 1950s.

66. In recent years, and at least 2014 and 2015, the Easter Sunrise Services at the Bayview Cross were sponsored, co-sponsored, or hosted by the McIlwain Presbyterian Church.

67. Easter Sunrise Services were held at the Bayview Cross in 2009 and 2010, as evidenced by the Jaycees' applications for park space rental and permission letters obtained via public records request.

68. The Bayview Cross Easter Sunrise Services have been advertised in online news outlets for at least the past ten years.

69. The Easter Sunrise Services often include the participation of local Christian leaders as well as the government.

### Prior Complaints and City's Responses

70. The City has been put on notice, repeatedly, that the Bayview Cross amounts to unconstitutional governmental endorsement of religion and that it makes non-Christian residents feel excluded from the community.

71. Upon information and belief, another local resident, Bill Caplinger, formally objected to the City about the Bayview Cross approximately twenty years ago.

72. For more than the past year, Plaintiff Suhor has sent numerous emails and public records requests to Pensacola City officials, including Defendant Cooper, Defendant Hayward, and Lysia Bowling, City Attorney.

73. For instance, Mr. Suhor sent emails to various City officials, including the defendants and the City Attorney, asking them to meet and discuss the cross and possible solutions. In these emails, Mr. Suhor suggested modifications to the cross, even offering to find volunteers to help make the modifications.

74. On July 29, 2015, AHA sent a cease-and-desist letter to the City and its officials, Brian Cooper, Mayor Hayward and Lysia Bowling, regarding the

cross. A true and accurate copy of AHA's letter is attached herein as Exhibit 6.

75. In the letter, AHA, on behalf of the Plaintiffs, informed Defendants that the Bayview Cross violates the Establishment Clause of the First Amendment and must be removed immediately. It stated in part: "Specifically, the City of Pensacola is violating the Establishment Clause of the First Amendment by prominently displaying a towering, stand-alone Latin cross – a Christian symbol – on government property at Bayview Park." See Exhibit 6. The letter also asked Defendants to respond to the letter within seven days of receipt of AHA's letter.

76. Defendants did not respond to AHA's letter.

77. Also on July 29, 2015, FFRF sent a cease-and-desist letter to City Attorney Lysia Bowling informing the City that "the government's permanent display of a Latin cross on public land is unconstitutional" as "[t]he cross unabashedly creates the perception of government endorsement of Christianity." A true and accurate copy of FFRF's letter is attached herein as Exhibit 7.

78. Defendants did not respond to FFRF's letter.

## Public Perception

79. In response to AHA and FFRF's letters, supporters of the Cross created a Facebook page, "Keep Bayview Cross," excerpts of which are attached hereto as Exhibit 8.

80. On August 15, 2015, a religious rally was held at Bayview Park in

support of the cross's placement on government property. Organizers of the rally, advertising the event on the "Keep Bayview Cross" Facebook page, described the gathering as "a time of prayer, worship and fellowship." One post stated, in part: "This gathering is not just about the removal of some 50+ year old cross, but is about Christians coming together, outside the church walls, making a stand for Christ and their faith. Our nation is in need of a revival. This is an opportunity for us to take a negative situation and use it for God's glory." See Exhibit 8.

### **Additional Evidence of Christian Favoritism**

81. Upon information and belief, the last few Easter Sunrise Services held at the Cross did not go through the same administrative application process required for other groups that use space at the park, suggesting preferential treatment toward religion generally, and Christianity specifically.

82. Park space rental agreements must be submitted at least two weeks prior to an event. City ordinance requires that application for special events in the City of Pensacola be made at least ten days prior to the desired date of the event.

83. The City's responses to Plaintiff Suhor's public records requests revealed that no permit was issued for Easter Sunrise Services between 2012-2015. For those years, there is no permit application, no insurance, and no record on file that the Jaycees, McIlwain Presbyterian Church or any other group reserved the space.

84. When Plaintiff Suhor learned of the religious rally in support of the Cross, he called the City Parks & Recreation Department on August 10, 2015, to ask whether the rally organizers had reserved the space at Bayview Park. He was told that they had not reserved the space, but that a reservation was unnecessary because of "free speech."

## CAUSES OF ACTION

85. All preceding allegations are incorporated herein by reference.

86. The City owns, maintains and prominently displays the Bayview Cross on public property.

87. The City thereby endorses and advances religion (and, specifically, Christianity) in violation of the Establishment Clause of the First Amendment to the United States Constitution.

88. The City's actions have the effect of advancing religion, and Christianity specifically, in violation of the Establishment Clause of the First Amendment to the United States Constitution.

89. The City's actions lack a secular purpose in violation of the Establishment Clause of the First Amendment to the United States Constitution.

90. The City's actions foster excessive governmental entanglement with religion in violation of the Establishment Clause of the First Amendment to the United States Constitution.

91. Defendants acted under color of state law in violating the First Amendment as described herein in violation of 42 U.S.C. §1983.

## RELIEF SOUGHT

The Plaintiffs demand that this court grant the following relief:

i. A declaratory judgment that the government's ownership, maintenance and prominent display on public property of the Bayview Cross violates the Establishment Clause of the First Amendment of the United States Constitution and is a violation of the Plaintiffs' constitutional rights under 42 U.S.C. § 1983;

ii. A permanent injunction ordering Defendants to remove the Bayview Cross from government property, and a permanent injunction enjoining Defendants (and their successors) from displaying a Christian cross on government property in violation of the Establishment Clause;

iii. A judgment in Plaintiffs' favor for nominal damages;

iv. An award to Plaintiffs of their reasonable costs, disbursements and attorneys' fees as allowed by law from the Defendant pursuant to 42 U.S.C. § 1988; and

v. An award of such other and further relief as the Court shall deem just.

Dated: May 4, 2016                          Respectfully submitted,

/s/ Monica L. Miller
MONICA L. MILLER

18

American Humanist Association
1777 T Street N.W.
Washington, D.C, 20009
Phone: 202-238-9088
Email: mmiller@americanhumanist.org
CA Bar: 288343 / DC Bar: 101625

DAVID A. NIOSE
American Humanist Association
1777 T Street NW
Washington, DC 20009
Phone: 202-238-9088
Email: dniose@americanhumanist.org
MA Bar: 556484/ DC Bar 1024530

REBECCA S. MARKERT
Freedom From Religion Foundation
PO Box 750, Madison, WI 53701
Phone: 608-256-8900
Email: rmarkert@ffrf.org
WI Bar Number: 1063232

MADELINE ZIEGLER
Freedom From Religion Foundation
PO Box 750, Madison, WI 53701
Phone: 608-256-8900
Email: mziegler@ffrf.org
WI Bar Number: 1097214

**ATTORNEYS FOR PLAINTIFFS**