## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

AMANDA KONDRAT'YEV,
ANDREIY KONDRAT'YEV,'
ANDRE RYLAND, and
DAVID SUHOR,

      Plaintiffs,

v.                        CASE NO.:  3:16cv195-MCR/CJK

CITY OF PENSACOLA, FLORIDA,
ASHTON HAYWARD, in his
official capacity as Mayor of
the City of Pensacola, and
BRIAN COOPER, in his
official capacity as Director of
the City of Pensacola Parks &
Recreation Department,

      Defendants.

_____/

## DEFENDANTS' REPLY IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, City of Pensacola, Ashton Hayward, as Mayor of the City, and

Brian Cooper, as Director of the City Parks & Recreation Department, pursuant to

Fed. R. Civ. P. 56 and N.D. Fla. Loc. R. 56-1, reply to Plaintiffs' Memorandum in

Opposition to Defendants' Motion for Summary Judgment.  [Doc. 35]

## I.      Reply to Plaintiffs' Introduction.

Plaintiffs' suggestion that the test set out in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), is the "governing Establishment Clause" test is an inaccurate and incomplete assessment of Establishment Clause jurisprudence.  [Doc. 35, pp. 5-6] Just two years after *Lemon* was decided, the Court noted that the factors identified in *Lemon* serve as "no more than helpful signposts."  *Hunt v. McNair*, 413 U.S. 734, 741 (1973).  As early as *Marsh v. Chambers*, 463 U.S. 783 (1983), the Supreme Court declined to apply *Lemon*.  Likewise, cases decided shortly before *Van Orden v. Perry*, 545 U.S. 677 (2005), also declined to apply the *Lemon* test. *See, e.g., Zelman v. Simmons-Harris*, 536 U.S. 639 (2002); *Good News Club v. Milford Central School*, 533 U.S. 98 (2001).  The various non-*Lemon* tests advanced by the Supreme Court are discussed in Defendants' motion for summary judgment and Defendants' response to Plaintiffs' motion for summary judgment. [Doc. 30 and Doc. 36]

As discussed in Defendants' response to Plaintiffs' motion for summary judgment [Doc. 36], the Supreme Court on the same day decided two Establishment Clause cases applying two different standards—*Van Orden v. Perry*, 545 U.S. 677 (2005) and *McCreary Cnty. v. ACLU of Ky.*, 454 U.S. 844 (2005). The split decisions in *McCreary* (applying a modified *Lemon* test with emphasis on government purpose) and *Van Orden* (with Breyer's concurring emphasis on the

specific facts of the case including consideration of history, tradition, and lack of community objection) did little to establish clear direction from the Supreme Court.

But these opinions do establish that *Lemon* is not *the* "governing" test.  In light of more recent, post-*Lemon* Supreme Court jurisprudence, the best approach is to apply *McCreary* or *Van Orden,* depending upon which more closely resembles the facts in a particular case.  The facts in this case more closely resemble the facts in *Van Orden*.  Thus, the *Van Orden* test—finding history, tradition, and lack of community objection to be significant deciding factors— results in favor of retaining the decades-old cross at issue in this action.  The similarities between this case and *Van Orden* are discussed in Defendants' motion for summary judgment and Defendants' response to Plaintiffs' motion for summary judgment.  [Doc. 30 and Doc. 36]

Further, it must be kept in mind that *Lemon* involved actual government endorsement and coercion:  legislative action that required salary supplements for teachers in Catholic-affiliated schools.  The Court adopted a three-part test in evaluating this legislative action:  "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government

entanglement with religion.'"   403 U.S. at 612-13 (internal citations omitted). Unlike *Lemon*, this case does not involve legislative action.

Plaintiffs' suggestion that *ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*, 698 F. 2d 1098 (11th Cir. 1983), decided more than twenty years before *Van Orden* and more than thirty years before *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014), is controlling in this case is not persuasive.   *Town of Greece* (involving legislative prayer) ignored *Lemon* altogether.  *Van Orden* acknowledged *Lemon* but specifically found that *Lemon* was not useful in dealing with passive monuments.  545 U.S. 686.   The plurality even questioned the fate of the *Lemon* test "in the larger scheme of Establishment Clause Jurisprudence."  *Id*.

Plaintiffs suggest that "[e]very cross challenged within the Eleventh Circuit has been found unconstitutional."  [Doc. 35, p.1]  That suggestion is misleading. *Rabun, supra*, and *Mendelson v. St. Cloud*, 719 F. Supp. 1065 (M.D. Fla. 1989), were decided prior to *Van Orden*.  The City of Starke in *Am. Atheists, Inc. v. City of Starke*, 2007 WL 842673 (M.D. Fla. March 30, 2007), failed to even respond to the Atheists' motion for summary judgment and the Atheists failed to bring to the district court's attention the *Van Orden* opinion.   Plaintiffs' statement that Defendants have not cited a "cross case" in this jurisdiction where the cross was found constitutional [Doc. 35, p. 2] is a red herring.  There has been no cross case decided in this jurisdiction in which *Van Orden* has been considered.

4

Likewise, Plaintiffs' statement that they cited cases from other jurisdictions that found the cross a violation of the Establishment Clause carries no weight. [Doc. 35, pp.1-2]  These cases are more fully discussed in Defendants' response to Plaintiffs' motion for summary judgment.  [Doc. 36, pp.13-17]

## II.    The material facts support the constitutionality of the Bayview Cross.

The City does not, as alleged by Plaintiffs, concede that the facts in this case establish an unconstitutional purpose and effect.   [Doc. 35, p.3]   Plaintiffs' argument in this section of their response is based on the faulty assumption that religion must be excluded from every aspect of public life.  Defendants' motion for summary judgment and their response to Plaintiffs' motion for summary judgment establish that Plaintiffs' assumption is incorrect.  [*See* Doc. 30 and Doc. 36]

The Supreme Court has made clear that "The goal of avoiding government endorsement does not require eradication of all religious symbols in the public realm."  *Salazar v. Buono*, 559 U.S. 700, 718 (2010).  "The Constitution does not oblige government to avoid any public acknowledgement of religion's role in society."  *Id.* at 719; *see also Lee v. Weisman*, 505 U.S. 577, 598 (1992) ("A relentless and all-pervasive attempt to exclude religion from every aspect of public life could itself become inconsistent with the Constitution.").

## III.   The City has not ignored *ACLU v. Rabun*.

*Rabun* was not discussed in Defendants' motion for summary judgment because it is no longer controlling precedent after *Van Orden*.  *Rabun* relied exclusively on the *Lemon* test; as stated above, *Lemon* is no longer the proper test for a passive monument like the Bayview Cross.  Nevertheless, Defendants did discuss *Rabun* in their response to Plaintiffs' motion for summary judgment.  [Doc. 36, pp.25-27]

## IV.   The *Lemon* test is no longer controlling precedent in a passive monument case.

### A.   This Court is not free to ignore *Van Orden*.

### B.    *Lemon* is not controlling in this passive monument case.

### C.   Defendants have not attempted to apply a legislative prayer exception as alleged by Plaintiffs.

Plaintiffs cite a 1993 Supreme Court case and a Georgia District Court case to suggest the *Lemon* test has not been overruled.  [Doc. 35, p.6]  The flaws in Plaintiffs' reliance on such cases is obvious—the 1993 case was pre-*Van Orden* and the Georgia District Court case is not controlling precedent for this Court. Plaintiffs fail to mention the numerous other Establishment Clause tests advanced by the Supreme Court since *Lemon* that are discussed in Defendants' motion for summary judgment.

Plaintiffs cite a pre-*Van Orden* case—*Glassroth v. Moore*, 335 F. 3d 1282 (11th Cir. 2003)—to suggest the Eleventh Circuit "explicitly held that *Lemon* remains controlling in 'religious display' cases."  [Doc. 35, p.8]  They cite a second pre-*Van Orden* case, *King v. Richmond Cnty*., 331 F. 3d 1271, 1276 (11th Cir. 2003), to suggest that "both the Supreme Court and this circuit continue to use *Lemon's* three-pronged analysis."  [*Id*. at p.9]  In 2003 when *Glassroth* and *King* were decided, the Eleventh Circuit did not have the benefit of *Van Orden*.

*Am. Humanist Ass'n v. City of Ocala*, 127 F. Supp. 3d 1265 (M.D. Fla. 2015), also cited by Plaintiffs [Doc. 35, p.9], did not involve a passive monument. Rather, the case involved a prayer vigil organized and promoted by the Mayor and Police Chief.   *Rich v. City of Jacksonville*, 2010 WL 4403095 (M.D. Fla. March 31, 2010), did not involve a passive monument.  *Rich* involved a blogger's First Amendment right to free speech.  [Doc. 35, p.9]  *Am. Atheists, Inc. v. City of Starke, supra*, also cited by Plaintiffs [*Id*. at pp.9-10], was addressed above.

The Eleventh Circuit did not, as alleged by Plaintiffs, "reaffirm" the validity of *Lemon* for passive monument cases in *Smith v. Governor for Ala.*, 562 Fed. Appx. 806 (11th Cir. April 2, 2014).  [Doc. 35, p.7]  *Smith* did not involve a passive monument.  Rather, it involved the constitutionality of a faith-based dorm in an Alabama correctional facility.  The court noted that *Lemon* set forth a three-prong

7

test for determining whether "a government program" is permissible under the Establishment Clause.  A government program is not involved in this case.

In fact, the Eleventh Circuit has specifically recognized that the Supreme Court has not consistently applied the *Lemon* test in Establishment Clause cases. In *Pelphrey v. Cobb Cnty., Ga.*, 547 F. 3d 1263, 1276 (11th Cir. 2008) (involving county commission invocations), the Eleven Circuit disagreed with the dissent's statement that *Lemon* has been consistently applied.  It cited the statement in *Van Orden* that many of the Supreme Court's "recent decisions simply have not applied the *Lemon* test."  *Id*.  The Eleventh Circuit made clear in *Pelphry* that "Establishment Clause challenges are not decided by bright-line rules, but on a case-by-case basis with the result turning on the specific facts."  *Id*. at 1269.

Plaintiffs quote from *dicta* in *Pelphrey* that the same tests may not be applied to a religious display as applied to legislative prayer.  [Doc. 35 p.11] This *dicta* is wholly unavailing to Plaintiffs.  *Pelphrey* did not discuss what test would be applicable to religious displays.  It merely noted that *Lemon* has not been consistently applied.  *Pelphrey* did not state, as suggested by Plaintiffs, that "'religious monuments' are not exempt from *Lemon*."  [Doc. 35, p.14]  It merely stated that the standard in *Marsh*, rather than the *Lemon* test, would apply to legislative prayer cases.  547 F. 3d at 1276.

D.   **Lower courts in this circuit are bound by *Van Orden* in passive monument cases.**

Contrary to Plaintiffs' assertion otherwise, Defendants are not in "fear" of *Lemon*. [Doc. 35, p. 6]   *Lemon* simply is not controlling in passive monument cases like this.   Also contrary to Plaintiffs' assertion otherwise [Doc. 35, p.8], this Court is bound to follow the *Van Orden* opinion even though it is a plurality opinion.   The question is whether Chief Justice Rehnquist's plurality opinion is controlling or whether Justice Breyer's concurring opinion is controlling.   *See, e.g., Lisk v. Lumber One Wood Preserving, LLC*, 792 F. 3d 1331, 1336-37 (11th Cir. 2015) (the views set out in Justice Scalia's plurality opinion and the views set out in Justice Stevens's concurrence are similar; thus, it is "unnecessary to decide whether the further binding opinion is that of the plurality or Justice Stevens"); *Wellons v. Comm'r v. Ga. Dept. of Corrections*, 754 F. 3d 1268, 1269 n. 2 (11th Cir. 2014) ("Justice O'Connor was the fifth and decisive vote for the plurality opinion.   Thus, her concurrence set binding precedent.").[1]

The plurality opinion of four Justices, authored by Chief Justice Rehnquist, rejected the application of the *Lemon* test as modified by the endorsement test, stating that it is "not useful in dealing with [this] sort of passive monument."   545

---

[1] Plaintiffs cite to footnotes in a 10th Circuit case, *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F. 3d 784 (105h Cir. 2009), and a 6th Circuit case, *ACLU v. Mercer Cnty.*, 432 F. 3d 624 (6th Cir. 2005) [Doc. 35, p. 13], to suggest plurality opinions provide no precedent in this circuit is contrary to 11th Circuit decisions.

U.S. at 686.   The plurality rejected the alleged violation of the Establishment Clause for two primary reasons:   First, because the "passive" text of the display makes a permissible acknowledgment of religion, *i.e.*, it does not demand that people assent to it; and second, because the display contains "dual significance," *i.e.*, it partakes of both religion and government, *i.e.*, the State's political and legal history.   *Id.* at 691, 692.   The plurality commented in *dicta* that the Establishment Clause does not "bar[] any and all governmental preference for religion over irreligion."   *Id*. at 684 n.3.   The plurality also explained it is not the government's place to "'throw its weight against efforts to widen the effective scope of religious influence.'"   *Id.* at 684 (*quoting Zorach v. Clausen*, 343 U.S. 306, 313-14 (1952)).

Justice Breyer provided the swing vote.   Like the plurality, he stated that the Court should not endorse religion nor "exhibit a hostility toward religion."   *Id*. at 704.[2]   Judge Breyer proposed to abandon the use of any traditional Court tests because he felt there is "no test-related substitute for the exercise of legal judgment."   *Id*. at 700.   Justice Breyer relied "less upon a literal application of any particular test than upon consideration of the basic purposes of the First Amendment's religion Clauses themselves."   *Id*. at 703-4.   He felt the

---

[2] The four dissenting Justices would have required a presumption of unconstitutionality (a clear hostility towards religion) unless a predominately secular purpose was unmistakably shown.   *Id.* at 708, 738.

determinative factor in *Van Orden* to be the 40 years the monument went unchallenged.  *Id*. at 702-3.

Under either the plurality opinion or Justice Breyer's concurring opinion the Bayview Cross is constitutional.  Under the plurality's reasoning, the facts in this case establish both the religious and the historical significance of the Bayview Cross.  [*See* Doc. 30, pp.4-17]  Under Justice Breyer's concurring opinion, the facts in this case establish it would be hostile towards religion (as well as the civic organization that donated and installed the cross) to remove the Bayview cross. [*Id*.]  The original cross was erected by a Pensacola civic organization more than 70 years ago and the current cross was erected by the same civic organization almost 50 years ago.  There has been no opposition to the cross until these Plaintiffs, two of whom live in Canada, complained.  [*Id*.]

Plaintiffs' suggestion that this Court "has already determined that *Lemon* is controlling in cases post-*Van Orden*" is incorrect.  [Doc. 35, p.13]  *ACLU of Fla., Inc. v. Dixie Cnty.*, 797, F. Supp. 2d 1280 (N.D. Fla. 2011), cited by Plaintiffs, was vacated by the Eleventh Circuit.  690 F. 3d 1244 (11th Cir. 2012).  A vacated case provides no precedent.  *See, e.g., Corp. Mgmt. Advisors v. Artjen Complexus*, 561 F. 3d 1294, 1295 n.1 (11th Cir. 2009) (case that was vacated on other grounds provides no binding precedent).  *Dixie County* involved the constitutionality of a

Ten Commandments monument.  The Eleventh Circuit did not address the merits of the claim because the court found the plaintiff lacked standing.

The remainder of Plaintiffs' argument in **Section IV.D.** (pp. 15-29) relies on facts and out-of-circuit cases discussed above, in Defendants' motion for summary judgment, and in Defendants' response to Plaintiffs' motion for summary judgment.[3]  Plaintiffs will rely on the arguments in those documents.  However, one matter needs to be addressed.  Plaintiffs' repeatedly suggest that *Van Orden* is inapplicable if a religious aspect "predominates."  [Doc. 35, pp. 15,19][4]  Plaintiffs' argument assumes that because the cross is a religious symbol its presence on city-owned property *ipso facto* violates the Establishment Clause.

Plaintiffs make this conclusion relying on the Tenth Circuit's nonbinding *Davenport* interpretation of *Van Orden*.  Interestingly, four judges, including now Justice Gorsuch, dissented from the denial of rehearing *en banc* explaining:

> The court's decision [in *Davenport*] continues a troubling development in our Establishment Clause cases—the use of a 'reasonable observer' who is increasingly hostile to religious symbols in the public sphere and who parses relevant context and history to

---

[3] Plaintiffs cite two additional 7th Circuit cases, *Pitts v. City of Kankakee*, 267 F. 3d 592 (7th Cir. 2001) [Doc. 35 p. 25] and *American Jewish Congress v. Chicago*, 827 f. 2d 120 (7th Cir. 1987). These cases are both out-of-circuit and pre-*Van Orden*.

[4] Plaintiffs also suggest, "The City itself acknowledges that the 'absence of any indication that Texas was making any religious use of it [the monument]' was a pivotal factor in Breyer's concurrence."  [Doc. 35, p. 22]  That is exactly the point here—there is no evidence the City of Pensacola or any of its officials was making any religious use of Bayview cross.  Rather, individual citizens were free to use the cross for religious or non-religious purposes.

> find governmental endorsement of religion. Despite assurance from the Supreme Court that the Establishment Clause does *not* require us to 'purge from the public sphere all that in any way partakes in the religious [citing *Van Orden*],' the court's 'reasonable observer' seems intent on doing just that.

*Id*. at 1101.

> Without consulting all relevant factors, we simply cannot determine whether the challenged displays violate the Establishment Clause. To presume otherwise is to evince hostility towards religion, which the First Amendment unquestionably prohibits. Thus, at the outset of this case the Defendants were not required to 'secularize the message' of the memorial crosses. Rather, like in any other case, the Plaintiffs bore the initial burden of proof—here, showing that, given all the relevant context and history, the memorial crosses had the purpose or effect of endorsing religion.

*Id*. at 1103-4.

### E. The Bayview cross is a passive monument.

Plaintiffs incorrectly allege that the Bayview cross is not a passive monument. [Doc. 35 p.30] Their argument is based solely on the fact that a Latin cross has religious significance. [*Id*.] Plaintiffs cite no authority stating a Latin cross is not a passive monument. Passive monuments, like the Bayview cross, do not do anything. They cannot coerce. Thus, they are passive.

### F. *Salazar* is adequately discussed by Defendants in Doc. 30, pp. 31-32, and Doc. 36, pp. 21-24, to respond to Plaintiffs' arguments at pp. 31-37 of their response.

**V.** *Lemon* **is not applicable to a passive monument like Bayview Cross.**

The City has not addressed the *Lemon* test because the latest pronouncement by the Supreme Court in *Van Orden* is that the *Lemon* test does not apply to passive monuments.  Furthermore, even before *Van Orden,* the Supreme Court did not apply *Lemon* in a consistent manner.  Thus, Plaintiffs' argument at pages 37-43 concerning the *Lemon* test is irrelevant.  One point, however, warrants mention. Plaintiffs acknowledge that "[n]othing would [] bar them [citizens] from utilizing a temporary cross."  [Doc. 35, p. 41]  This acknowledgment is inconsistent with Plaintiffs' assertion that "[a] Christian cross is exclusively religious and cannot be divorced from its religious meaning," so therefore its display is unconstitutional. [*Id*. at p. 15]

**VI.   Removing the cross would evince hostility--not neutrality--toward religion.**

Plaintiffs' reliance on *Allegheny* to suggest that removing the cross would not evince a hostility towards religion is not persuasive.  *Allegheny* involved very different facts.  Further, *Allegheny* was abrogated by *Town of Greece, N.Y. v. Galloway*, 134 S. Ct. 1811 (2014).

**VII.  Conclusion.**

While there is confusion concerning the appropriate test to apply in Establishment Clause cases, three things are clear from the most recent Supreme Court cases:  first, facts are important; second, *Lemon* does not apply to passive

monuments; and third, the Supreme Court is moving away from *Lemon* with respect to Establishment Clause cases in general.

*/s/ Terrie L. Didier*
**J. NIXON DANIEL, III**
Florida Bar No. 228761
jnd@beggslane.com
ch@beggslane.com
**TERRIE L. DIDIER**
Florida Bar No.: 0989975
tld@beggslane.com
aeh@beggslane.com
**Beggs & Lane, RLLP**
501 Commendencia Street (32502)
P. O. Box 12950
Pensacola, FL  32591-2950
(850) 469-3306
(850) 469-3331 – fax

## CERTIFICATE OF COMPLIANCE

Pursuant to Northern District of Florida Local Rule 7.1(F), the undersigned hereby certifies that the word count is 3,174 for this document, excluding case style, signature block and certificate of service and certificate of compliance.

*/s/ Terrie L. Didier*
**TERRIE L. DIDIER**
Florida Bar No.: 0989975

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of May, 2017, the foregoing

*Defendants' Reply in Support of Defendants' Motion for Summary Judgment* was

filed with the Clerk of the Court via the CM/ECF Filing System, which will send a

notice of electronic filing to:

**Monica Lynn Miller**
**David A. Niose**
American Humanist Association
1777 T St. NW
Washington, DC  20009
202-238-9088
mmiller@americanhumanist.org
dniose@americanhumanist.org

**Rebecca Markert**
**Madeline Ziegler**
Freedom from Religion Foundation
P. O. Box 750
Madison, WI  53701
608-265-8900
rmarkert@ffrf.org
mziegler@ffrf.org

*/s/ Terrie L. Didier*
Florida Bar No.:  0989975
**Beggs & Lane, RLLP**